**ARMCO, INC., Plaintiff-Appellee,**

v.

**ARMCO BURGLAR ALARM CO., INC.,
Defendant-Appellant.**

No. 81–1415.

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1982.

Michael Lowenberg, Dallas, Tex., for defendant-appellant.

Richards, Harris & Medlock, V. Bryan Medlock, Jr., Dallas, Tex., John D. Hayes, Cincinnati, Ohio, for plaintiff-appellee.

Before JOHNSON, GARWOOD and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

That "American Rolling Mill Company" and "Alarmco" both shorten to "Armco" is the source of this trademark infringement case. The district court, after making findings of fact and conclusions of law, entered a judgment enjoining defendant-appellant Armco Burglar Alarm Co. from using the "Armco" name in a burglar and fire alarm business in the Dallas-Fort Worth area. We affirm the trial court in all respects except its finding on the defense of laches as to which we reverse and remand.

*Armco*

Plaintiff-appellee Armco, Inc. ("Armco") is an Ohio corporation that has long been successful. Founded in 1917 as the American Rolling Mill Company, it changed its name to Armco Steel Corp. in 1948 and to Armco, Inc., in 1978, after filing this suit. Armco currently sells steel to industrial and commercial customers and has diversified into other areas with net sales in 1979 of five billion dollars. Its Dallas-based subsidiary, Armco Industrial Credit Corp., for example, supplies industrial credit to steel customers. Other subsidiaries, some under the "Armco" name, are engaged in insurance, coal mining, plastics manufacturing, and oil and gas exploration. Despite its diversification, Armco at the time of trial had no plans to enter the burglar alarm market.

Since 1948, Armco or its predecessor Armco Steel Corp. has owned a number of federal registrations of the Armco trademark. Armco's advertising and publicity frequently bear the triangular "Armco" logo, as follows:

Armco has advertised extensively in trade publications and business magazines. From approximately 1960 until the time of trial, however, Armco had only one Tarrant County employee, Les Neumann, a salesman. His office phone number was listed in the Fort Worth white pages under Armco Steel Corp. (later Armco, Inc.).

### Armco Burglar Alarm

Defendant-appellant Armco Burglar Alarm Co. ("Armco Burglar Alarm") is a Texas corporation founded in the late 1960's by a high school student and his father who began by installing burglar alarms in family-owned department stores. While originally named Alarmco Burglar Alarm Co., it changed its name in 1970 at the request of one of its suppliers who was also using the Alarmco name.[1] In that year the burglar alarm company had fifteen to twenty-five accounts and approximately $15,000 in business. By 1975, when the company incorporated, it had reached 400 to 600 accounts and $200,000 to $300,000 in business. At the time of trial the company had over 1000 accounts and a waiting list of forty to fifty accounts.

Although the volume of Armco Burglar Alarm's business has expanded considerably since its founding, the company remains localized in its operations. Most of its accounts are in Tarrant County, where the company is based. Indeed, at the time of trial Armco Burglar Alarm had no plans to service accounts more than thirty to forty miles from its Fort Worth headquarters.

1. When it changed its name Armco Burglar Alarm Co. was aware that another company known as Armco existed. It did not, however, adopt the "Armco" name in order to trade on Armco, Inc.'s goodwill and reputation. *See* note 7 *infra.*

2. The record does not reveal how Armco discovered Armco Burglar Alarm's listing, either. Nor does it reveal which directory listing

Armco Burglar Alarm does not manufacture burglar and fire alarm equipment. Rather, it monitors equipment it has installed from a station located in its Fort Worth headquarters. Armco Burglar Alarm also employs patrol guards who perform routine patrols and are dispatched along with the local police in response to alarm signals.

Most of Armco Burglar Alarm's business is referred by its customers, although it has done a limited amount of advertising by mail and in the yellow pages. It has also displayed its logo on its headquarters, its vehicles, and the homes and businesses it services. That "stair-step" red-with-black-lettering design appears as follows:

Since 1970, Armco Burglar Alarm has been listed in the Fort Worth white and yellow pages and in the Dallas white pages.

### History of the Litigation

Armco admitted that it knew in 1970 that Armco Burglar Alarm was listed in the Fort Worth telephone directory. It denied knowing, however, that appellant was using the name "Armco" for its burglar alarm business, because a commercial tracing service it hired was unable to locate Armco Burglar in 1970. It is nonetheless undisputed that Armco Burglar Alarm was in business at that time at the phone number and address listed in the directory. The record has no explanation as to why the tracing service could not locate Armco Burglar Alarm.[2]

(white or yellow pages) Armco had seen. Armco's awareness of the 1970 listing was established by way of a request for admission, not by testimony at trial. Mr. Neumann was appellee's only Tarrant County employee at the time, but he testified that he did not become aware of Armco Burglar Alarm until he saw its yellow pages ad in 1976.

In 1976 Mr. Neumann, Armco's lone Tarrant County employee, saw an Armco Burglar Alarm ad in the yellow pages. He clipped it out and sent it to his district manager, from where it was routed to Armco's headquarters. Armco by letter dated February 1976 requested that Armco Burglar Alarm discontinue use of the "Armco" name. When Armco Burglar Alarm did not respond, Armco in April 1976 wrote a second letter. Negotiations followed, unsuccessfully, for almost two years.

On May 12, 1978, Armco filed suit against Armco Burglar Alarm, alleging trademark infringement and unfair competition under the Lanham Act and seeking damages and injunctive relief.[3] In March 1980, after a change of attorneys, Armco Burglar Alarm filed a jury demand, and three months later it filed an amended answer in which it denied that its use of the Armco name had created any likelihood of confusion and asserted the affirmative defense of laches.

On the eve of trial, Armco moved to strike Armco Burglar Alarm's jury demand on the grounds that Armco was no longer seeking legal relief. The trial judge allowed the case to be tried before a jury, with the understanding that he would treat the jury's findings of fact as advisory if he later determined that there was no right to a jury trial.

The jury found that Armco had not proved likelihood of confusion, and that it had in any event delayed an unreasonable length of time in pressing its infringement claim. The trial judge, treating the jury's findings as advisory, entered a judgment granting injunctive relief to Armco after determining (1) that there was a likelihood of confusion and (2) that Armco was not guilty of laches. This appeal followed.

### Right to Trial by Jury

■ Armco Burglar Alarm claims that it was deprived of its right to trial by jury. We find no merit to this claim. The right to trial by jury is determined by the issues, not by the pleadings. 9 Wright & Miller, *Federal Practice and Procedure* § 2304 (1971); *Hildebrand v. Board of Trustees of Michigan State University,* 607 F.2d 705, 709–710 (6th Cir.1979). Although Armco never amended its complaint which sought damages as well as equitable relief, it was within the trial judge's discretion to grant Armco's motion that effectively dismissed the legal claims. This then made it proper for the trial judge to treat the jury verdict as advisory. *See* F.R.Civ.P. 39(a)(2); *Anti-Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 307 (9th Cir.1979).[4]

### Likelihood of Confusion

Armco Burglar Alarm contends that the trial court's finding of likelihood of confusion was clearly erroneous, conceding that likelihood of confusion is a question of fact. *Sun Banks of Florida v. Sun Federal Savings & Loan,* 651 F.2d 311, 315 (5th Cir.

---

**3.** 15 U.S.C. § 1114(1) provides that:
Any person who shall, without the consent of the registrant—
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive shall be liable in a civil action by the registrant for the remedies hereinafter provided.

**4.** *Anti-Monopoly* was a trademark infringement case in which the original complaint contained two counts for damages and the defendant counterclaimed for damages. The court held that a nonjury trial was proper after defendant withdrew its counterclaim and successfully moved for severance of plaintiff's two legal claims: "Anti-Monopoly has not cited any authority for the proposition that, having once asserted a claim for damages, a party may not withdraw such a claim, or that upon such a withdrawal a jury trial remains appropriate although only equitable issues remain in the case." *Id.* at 307.

1981); *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d 500, 504 (5th Cir.1980); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 258 (5th Cir.), *cert. den.,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

■ This court has enumerated seven factors to be considered in determining likelihood of confusion: (1) type of trademark; (2) similarity of design; (3) similarity of product; (4) identity of retail outlets and purchasers; (5) identity of advertising media utilized; (6) defendant's intent; (7) actual confusion. *Roto-Rooter Corp. v. O'Neal,* 513 F.2d 44, 45 (5th Cir.1975). *See also Sun Banks of Florida v. Sun Federal Savings & Loan,* 651 F.2d at 314; *Exxon Corp. v. Texas Motor Exchange of Houston, Inc.,* 628 F.2d at 504; *Amstar Corp. v. Domino's Pizza,* 615 F.2d at 259. Having reviewed these seven factors and the other evidence in the record, we are not "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The trial court's finding of likelihood of confusion was not clearly erroneous.

■ In affirming this finding by the trial court we are aided by the fact that a finding of likelihood of confusion need not be supported by a majority of the so-called *Roto-Rooter* factors. Several of them do not support the district court's finding. The trademarks of Armco, Inc., and Armco Burglar Alarm have dissimilar designs.[5] The companies provide different products and services. The companies serve different customers.[6] At the time of trial Armco Burglar Alarm, unlike Armco, did very little advertising, relying mostly on referrals. Finally, but significantly, there was no evidence that Armco Burglar Alarm adopted the "Armco" name in order to trade on Armco's goodwill.[7]

Nevertheless, arbitrariness of the mark and an absence of third-party use are enough to make "Armco," in the vernacular of the Fifth Circuit, a "strong" trademark. *Sun Banks of Florida v. Sun Federal Savings & Loan,* 651 F.2d at 315–317; *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d at 504; *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d at 259–260.[8] "Armco," as the trial court found, is an arbitrary or distinctive mark, as opposed to a merely suggestive or descriptive mark.[9] The rec-

**5.** Both companies, however, frequently referred to themselves as "Armco" without any logo. For example, Armco Burglar Alarm's company cars had vanity license plates lettered "Armco 1" through "Armco 4."

**6.** Armco sold to industrial and commercial customers, although some of its products (for example, its "A to Z" nails and its "Piqua" crushed limestone) appeared in retail stores with the "Armco" name on them. Armco Burglar Alarm served a mix of residential and business customers. As to businesses that were likely to purchase from both Armco's, the record indicated that different people at those businesses were likely to make the respective purchasing decisions.

**7.** Armco Burglar Alarm's president conceded that he was aware of another use of the "Armco" name at the time he appropriated it. It is undisputed, however, that Armco Burglar Alarm had no intent to derive benefit from Armco's reputation. The intent to "pass off" one's products and services as those of another company has been deemed evidence of likelihood of confusion, on the theory that confusion is more likely when it is intended. However, that the alleged infringer was simply aware of

another use of the name does not furnish evidence of likelihood of confusion. *Sun Banks of Florida v. Sun Federal Savings & Loan,* 651 F.2d at 318–319; *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d at 506; *Amstar Corp. v. Domino's Pizza,* 615 F.2d at 263. Nor does it establish such "bad faith" as to deny availability of the laches defense. An intent to pass off is necessary there as well. *Johanna Farms, Inc. v. Citrus Bowl, Inc.,* 468 F.Supp. 866, 881–882 (E.D.N.Y.1978).

**8.** Armco Burglar Alarm argues that Armco is not a strong mark because it is not well-known. While the notoriety of a trademark is a factor that may be considered by a trial court, it does not enter into the "strength" of the trademark as that term has been interpreted by the Fifth Circuit.

**9.** *See also Armco Steel Corp. v. International Armament Corp.,* 249 F.Supp. 954, 956 (D.D.C. 1966) (Armco is "a distinctive arbitrary, technical trademark, as opposed to a suggestive or merely descriptive mark"; use of "Interarmco" trademark enjoined).

ord does not show any third-party use of the "Armco" trademark.

In addition, there was evidence at trial of actual confusion. Mr. Neumann, Armco's lone Tarrant County employee, testified that he had received phone calls at least once a month from people trying to reach Armco Burglar Alarm. He also testified that two acquaintances of his had asked, "When did y'all get into the burglar alarm business?" Two Armco employees working in the Dallas office testified that they had received one phone call each from a person trying to reach Armco Burglar Alarm.[10] Given this evidence, and the strength of the Armco trademark, we cannot conclude that the trial court's finding of likelihood of confusion was clearly erroneous.

Armco Burglar Alarm relies heavily on *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, and *Sun Banks of Florida v. Sun Federal Savings & Loan,* 651 F.2d 311, in which this court reversed lower court findings of likelihood of confusion. Those cases, however, are distinguishable. Not only was the evidence of actual confusion thin in *Amstar Corp.* and *Sun Banks,*[11] the trademarks there were also weak. *Amstar Corp. v. Domino's Pizza,* 615 F.2d at 259–260; *Sun Banks of Florida v. Sun Federal Savings & Loan,* 651 F.2d at 315–317. In *Amstar Corp.* and *Sun Banks* there was evidence of considerable third-party use not present here. 615 F.2d at 259–260; 651 F.2d at 316–317.

The seven *Roto-Rooter* factors are not the only "factors" properly considered in determining likelihood of confusion. The *Roto-Rooter* court said that "likelihood of confusion is determined by evaluating a variety of factors *including*" the seven enumerated factors. 513 F.2d at 45 (emphasis added).[12] Other relevant evidence on the likelihood of confusion issue includes the fact that both Armco and Armco Burglar Alarm sell relatively high-cost products and services. Potential customers presumably would be more likely to investigate before purchasing and would be less likely to be misled by a similarity in the two companies'

---

10. Armco Burglar Alarm contends that the trial judge committed reversible error in admitting this evidence because it was hearsay. The trial judge, however, correctly held this evidence admissible because it was not being offered "to prove the truth of the matter asserted." F.R. Evid. 801(c). The testimony about phone calls and conversations was not being offered to show that Armco and Armco Burglar Alarm were the same business, but to show that people *thought* they were. Armco Burglar Alarm claims that the statements were the equivalent of "I believe that defendant and plaintiff are one and the same or are related," and were offered to prove the truth of the matter asserted, namely that the declarant actually did hold such a belief. Even so, they would be admissible under the state of mind exception. F.R. Evid. 803(3). *See McCormick on Evidence* 590–591 (2d ed. 1972). The statement regarding the admissibility of polling evidence in *United States v. An Article of Drug, Etc.,* 415 F.2d 390, 393 (5th Cir.1969), on which Armco Burglar Alarm relies, is no longer the law of this circuit. *See Holiday Inns, Inc. v. Holiday Out in America,* 481 F.2d 445, 447 (5th Cir. 1973).

Armco Burglar Alarm argues that the trial judge should not have permitted Mr. Neumann to testify that his answering service operator had told him she had received calls inquiring about Armco Burglar Alarm. That Neumann received a report from the operator was rele-

vant to the reasonableness of his actions. However, to prove confusion the truth of the operator's out-of-court assertion would be at issue and therefore hearsay. This was a bench trial. Considering testimony for some and not other purposes is daily fodder in the trial court. We find no prejudicial error.

11. The evidence of actual confusion was actually somewhat stronger here than in *Amstar Corp.* and *Sun Banks.* In *Amstar Corp.* plaintiff's evidence of actual confusion amounted to two verbal inquiries as to a connection between Domino's Pizza and Domino Sugar and one misaddressed letter. 615 F.2d at 263. In *Sun Banks* there was evidence of fifteen incidents of "confusion," but none involved a potential customer considering whether to transact business with one or the other party. 651 F.2d at 319. The Fifth Circuit precedents give varying weight to evidence of actual confusion, depending on whether it is short-lived confusion by individuals casually acquainted with a business or lasting confusion by actual customers. *Safeway Stores, Inc. v. Safeway Discount Drugs,* 675 F.2d 1160, 1166–1167 (11th Cir. 1982) (analyzing Fifth Circuit case law).

12. We imply no criticism of the able trial judge. He correctly pointed out that likelihood of confusion analysis is "not limited to" the seven factors.

names.[13] On the other hand, it may also be significant that Armco is diversified. Diversification makes it more likely that a potential customer would associate the non-diversified company's services with the diversified company, even though the two companies do not actually compete. Finally, Armco Burglar Alarm's reliance on word-of-mouth advertising may diminish the importance of the dissimilarity between the trademarks. Our review of these additional factors does not alter our conclusion that the trial court's finding of likelihood of confusion was not clearly erroneous.

### Laches

■ The equitable defense of laches has three interrelated elements: (1) delay in asserting a right or claim; (2) that the delay was inexcusable; (3) that undue prejudice resulted from the delay. *Environmental Defense Fund v. Alexander*, 614 F.2d 474, 478 (5th Cir.), *cert. den.*, 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980); 4 Callman, *Unfair Competition, Trademarks and Monopolies* § 87.3(b) (3d ed. 1970).[14] The analysis of the defense is said to proceed on, "LACHES = DELAY × PREJUDICE," a factual calculation of the trial court. 2 T. McCarthy, *Trademarks and Unfair Competition* § 31.5 (1973). *See also* 4 Callman, *Unfair Competition, Trademarks and Monopolies* § 87.3(b)(3).

■ Given these elements it is plain that the time spectrum for their application is critical. That time period begins when an owner of a mark first has knowledge of the accused use. We have not explicitly decided whether the dating of that beginning point is provided by inquiry into subjective knowledge or whether a mark owner ought to be charged with what it should have known. Other courts have adopted an objective standard. *Valmor Products Co. v. Standard Products Corp.*, 464 F.2d 200, 204 (1st Cir.1972) (plaintiff cannot be charged with knowledge solely on the basis of defendant's registration where no claim was made that lack of knowledge was willful *or negligent*); *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103 (7th Cir.1970) ("Plaintiff is chargeable with the information it might have received had due inquiry been made"); *Chandon Champagne Corp. v. San Marino*, 335 F.2d 531, 535 (2d Cir.1964) (delay should be measured from the time plaintiff had "ample opportunity" to discover defendant's infringement).[15] This precedent is persuasive. The objective standard of "knew or should have known" is a logical implementation of the duty to police one's mark. Nor do we see a principled reason to read the law as distinguishing between inexcusable delay in obtaining knowledge of infringing activity and inexcusable delay *after* obtaining such knowledge.

■ The trial court, however, did not apply this standard. Armco admitted that it knew in 1970 that Armco Burglar Alarm was listed in the Fort Worth telephone directory. At the same time Armco denied that it knew Armco Burglar Alarm was *in business* because a commercial tracing service was unable to locate appellant. The trial court reasoned that the tracing service's failure to locate Armco Burglar Alarm was "so as not to establish notice." Implicitly, the trial court was concluding

---

**13.** Armco Burglar Alarm's contentions that confusion would not have benefited it and that "Armco" is not a well-known trademark were also entitled to be taken into account in determining likelihood of confusion.

**14.** There is no doubt that laches may defeat claims for injunctive relief as well as claims for an accounting. This was implicitly recognized in *Roto-Rooter Corp. v. O'Neal*, 513 F.2d at 46, and explicitly decided in *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1041 (2d Cir. 1980).

**15.** The former Court of Customs and Patent Appeals seems to have taken a more restrictive view of the availability of the laches defense. "To prove the defense of laches one must make a showing that the party against which the defense is asserted, had actual knowledge of trademark use by the party claiming the defense or at least a showing that it would have been inconceivable that the party charged with laches would have been unaware of the use of the mark." *Georgia-Pacific Corp. v. Great Plains Bag Co.*, 614 F.2d 757, 759 (C.C.P.A. 1980).

that only actual notice could be sufficient notice.[16] Under a test of "knew or should have known," however, Armco indisputably had notice of Armco Burglar Alarm's alleged infringement in 1970. Armco could have found out that Armco Burglar Alarm was in business then by dialing the number it concedes it knew was listed in the directory.[17]

In sum, the record establishes as a matter of law that Armco, Inc., should have known of the allegedly infringing activity in 1970. The trial court therefore erred in measuring the delay for purposes of laches from 1976.

■■■ Armco notified Armco Burglar Alarm of its objections to alleged infringement in 1976. Hence the laches defense must be applied to a time spectrum traversed by the critical years 1970 to 1976. During these six years Armco Burglar Alarm's business grew substantially. Armco Burglar Alarm had 400–600 accounts by 1975, as compared to fifteen to twenty-five in 1970. Its annual sales during that time multiplied fifteen times over. It follows that the error in rejecting 1970 as a starting date for the examination of prejudice infected the ultimate conclusion that Armco was not barred by laches. When a finding of fact is based on the misapprehension of governing legal standards, it loses the insulation of the "clearly erroneous" rule. *See Chevron Chemical Co. v. Voluntary Purchasing Groups,* 659 F.2d 695, 703–704 (5th Cir.1981), *cert. den.,* —— U.S. ——, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982) (clearly erroneous standard of review inapplicable to finding of no likelihood of confusion in trademark case where trial court "misap-

plied one critical legal standard" in making subsidiary fact determination).

Nevertheless we cannot say on the record before us that laches was established as a matter of law. *See Sheila's Shine Products, Inc. v. Sheila Shine, Inc.,* 486 F.2d 114, 125 (5th Cir.1973) (six-year delay in asserting rights does not warrant overturning district court's finding of no estoppel); *Roto-Rooter Corp. v. O'Neal,* 513 F.2d at 46 (delay of slightly less than five years; finding of laches reversed). Accordingly, we affirm the judgment below in all respects except we reverse the finding of the trial court rejecting the defense of laches and remand for further proceedings to determine whether Armco, Inc., should be barred as a result of its six-year delay in asserting its rights from obtaining injunctive relief against Armco Burglar Alarm. We leave to the discretion of the able trial judge whether to take additional evidence or to determine delay and prejudice from the record as it now exists, but in either case he must decide the issue with a time spectrum commencing in 1970.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

---

**16.** The judge did give a proper charge to the advisory jury. The charge asked, "Do you find from a preponderance of the evidence that Armco, Inc. ... delayed an unreasonable length of time after it knew or should have known that Armco Burglar Alarm Company was using the name Armco before it first asserted its claim that such use was wrongful." We have read the trial judge's opinion as requiring actual knowledge. That reading, in fairness, is not without doubt. Regardless, if the trial judge did apply the objective standard to the laches issue, we hold clearly erroneous his finding that Armco neither had nor should have had notice until 1976.

**17.** *National Trailways Bus System v. Trailway Van Lines,* 269 F.Supp. 352 (E.D.N.Y.1965), in which the court refused to impute notice on the basis of listings in local telephone directories, is of course distinguishable. Plaintiff there had no inkling that the infringing name was being used, while the plaintiff here admitted it knew Armco Burglar Alarm was in the telephone directory. Also, the two companies, unlike Armco (then Armco Steel Corp.) and Armco Burglar Alarm, would not have been listed next to each other in the phone book.