Jesus CANO, Appellant,

v.

Marcos MACARENA, Appellee.

No. 1599.

Court of Civil Appeals of Texas,
Corpus Christi.

Sept. 25, 1980.

Rodolfo R. Munoz, Kingsville, for appellant.

Leo Villarreal, Kingsville, for appellee.

OPINION

NYE, Chief Justice.

This is an appeal from a suit brought to determine ownership of the trademark, "La Tapatia," and its accompanying design, on certain corn tortilla products. Marcos Macarena sued Jesus Cano for damages and a permanent injunction prohibiting Cano's future use of such trademark. Cano answered, alleging that he had a superior common law ownership right to the trademark that he acquired by his own "prior, sole and exclusive use in the local market." Cano filed a "counter claim" seeking damages for Macarena's alleged breach of a contract to sell certain tortilla equipment to Cano. After a jury trial, the trial court entered a judgment declaring Macarena to be the owner of the trademark in question and permanently enjoining Cano from using the trademark. No damages were awarded to either party. Cano appeals.

Cano's claim that he is the owner of the trademark in question is based upon a course of business dealings between the parties that commenced in April of 1977. At that time, Macarena owned Mexico Bakery No. I and No. II, located in Kingsville, Texas. In a separate building located behind Bakery No. II, Macarena maintained all the equipment necessary to produce corn tortillas, a product not sold at either of his other two bakeries. Cano and his wife, who were former Kingsville residents and who were then vacationing in Kingsville from their home in California, stopped at Bakery No. I to purchase pastries. While in the bakery, Macarena offered Cano an opportunity to return from California to Kingsville to engage in the corn tortilla business.

According to Cano's testimony, Macarena offered to sell the corn tortilla equipment to Cano if Cano would return to Kingsville, operate the business for a year and pay Macarena 50% of the net profits generated from the business. The purchase price was to be a mutually agreed upon sum. Macarena testified that he offered Cano the opportunity to manage Macarena's corn tortilla business for a salary of 50% of the net profits during the first year. If, after one

year, Cano liked the work, Macarena agreed he would sell the business to Cano for a mutually agreeable price to be determined later.

In July, 1977, Cano moved to Kingsville. The parties first attempted to reduce their agreement into a written instrument. On August 8, 1977, the parties executed a form "lease" which had been completed by Macarena's bookkeeper and notary public. Pursuant to the terms of this agreement, Macarena as "Lessor" leased to Cano the building and corn tortilla equipment for a one–year term commencing August 8, 1977, for rental payments equal to "50% of the Net Profits of all the Business." At that time, the parties did not agree upon the terms of the proposed sale of the business and the following clause was stricken from the agreement before it was executed by the parties:

"Lessee [Cano] shall have option to buy Corn Tortilla Equipment for $20,000.00 at 5% interest at the end of said Lease."

Both parties testified concerning discussions that took place during the following months regarding a purchase price for the corn tortilla equipment. However, no other agreement was executed.

The record contains considerable evidence, including testimony of several witnesses and numerous business documents, concerning the manner in which the corn tortilla factory was operated and the business relationships between Macarena and Cano. In summary, the evidence indicates that both parties participated in the conduct of the corn tortilla business. Macarena, for example, paid the expenses, including payroll expenses, related to the business with printed checks denominated "Mexico Bakery," which contained an added stamped notation, "La Tapatia Corn Tortilla Factory" just above the signature line of the check. Macarena also issued checks for half of the net monthly profits which were made payable to Cano and generally contained the further handwritten notation "payment as per contract." Cano assumed the responsibilities for the daily production of the tortillas.

The record also contains evidence pertaining to the adoption and use of the trademark "La Tapatia." Cano testified in substance that, after Macarena first proposed the business proposition and prior to the time Cano moved from California to Kingsville, he and his wife visited a corn tortilla factory in Selma, California, which was called the "La Tapatia" factory. Cano observed the operations of the factory and returned with a plastic bag printed with a "La Tapatia" label and design. Cano's wife testified that it was her idea to use the name "La Tapatia" in conjunction with the Kingsville corn tortilla factory operations and that she suggested the idea to Macarena who agreed the idea was a good one. Macarena's testimony is consistent. He stated that Cano brought the idea of "La Tapatia" to him and that he went to a plastics factory in Elsa, Texas, where he placed an order and paid for plastic bags and plates for the bags printed "La Tapatia."

During the year Cano operated the "La Tapatia" in Kingsville, he and Macarena had several discussions concerning the purchase price of the tortilla equipment Macarena would accept upon the completion of their one year written contract. According to Macarena, a purchase price of $15,000.00 was discussed, but an actual agreement between the parties was never reached. Cano, however, testified in summary that on May 8, 1978, Macarena agreed to sell the equipment for $15,000.00 and that he broke the agreement on July 25, 1978, by informing Cano that the purchase price would be $30,000.00.

By the end of July in 1978, Cano terminated his association with Macarena. He then moved to Falfurrias, where he began to make corn tortillas on equipment he purchased there from David Longoria. Cano stated that, commencing in August, he operated the tortilla business in Falfurrias under the name "City Tortilla," and that, sometime around October, 1978, he sold corn tortillas under the name "La Tapatia." In the meantime, Macarena continued the corn tortilla business in Kingsville under

the name "La Tapatia." The sales territory of the respective parties overlapped. Macarena filed this suit on September 6, 1978. On September 11, 1978, Macarena obtained a certificate of registration in Texas for the trademark "La Tapatia" and its accompanying design.

After hearing all of the evidence, the jury received a charge containing thirteen special issues. The first six special issues concerned the respective claims of the parties, each of whom asserted prior common law ownership of the trademark "La Tapatia." The remainder of the special issues concerned Cano's counterclaim which alleged the existence of a contract of sale of the tortilla equipment between the parties which Macarena allegedly breached. The jury failed to find that either party had acquired prior common law rights to the trademark in question. The jury, however, did find Macarena's and Cano's trademarks "La Tapatia" to be sufficiently similar so as to "confuse or mislead the consumer" regarding their respective corn tortilla products. The jury failed to answer the remaining issues concerning a contract of sale on Cano's counterclaim. The trial judge entered a judgment declaring Macarena to be the owner of the "La Tapatia" trademark and emblem based upon his Certificate of Registration and entered a permanent injunction prohibiting Cano from using the trademark.

Judgment in this case was entered by the trial court on March 27, 1979. Thereafter, Cano timely filed a motion for new trial which was overruled by operation of law on May 21, 1979. Thirty days later (June 20, 1979), Cano filed an instrument designated "COST BOND." On July 2, 1979, more than thirty days after judgment was entered, Cano filed an instrument designated "APPEAL BOND" which contains a notation of approval by the clerk of the trial court.

■ In his first "counterpoint," Macarena challenges our jurisdiction "because Appellant did not file his appeal bond within thirty days after his motion for a new trial had been overruled by operation of law."

We find no merit in Macarena's contention. Macarena completely ignores the "cost bond" which was timely filed. Although the original bond was defective in several respects, it was filed by the clerk and it was sufficient to invoke our jurisdiction. See *Woods Explor. & Prod. Co. v. Arkla Eq. Co.*, 528 S.W.2d 568, 570 (Tex.Sup. 1975); *United Ass'n of Journeymen, Etc. v. Borden*, 160 Tex. 203, 328 S.W.2d 739, 741 (1959); *Grogan Mfg. Co. v. Lane*, 140 Tex. 507, 169 S.W.2d 141 (1943); Rule 430, T.R.C.P. At no time, either in the trial court or here on appeal in his counterpoint, did Macarena challenge the form or substance of either bond that Cano filed. See Rules 354(a), 365, 366, 430, Texas Rules of Civil Procedure.

■ First, Cano contends that the trial court was not authorized to grant an injunction based upon Macarena's Certificate of Registration of the trademark in question because such certificate was not specifically mentioned in his pleadings. Cano's second theory is that the issue of priority of ownership of the trademark was based upon common law principles and, since the jury failed to find that Macarena adopted or used the trademark in question prior to Cano, Macarena does not have a valid Certificate of Registration. Cano, therefore, concludes that the trial court erred in granting the injunction because Macarena's pleadings were insufficient and because Macarena did not have common law rights as a necessary prerequisite to obtaining a valid Certificate of Registration. We do not agree with either theory.

Cano complains of an evidentiary matter. See Tex.Bus. & Comm. Code § 16.15(c) (1968). Even if we were to agree that Macarena's pleadings should have mentioned the Certificate of Registration, Cano waived the objection. The Certificate of Registration was introduced into evidence without objection. Thereafter, the trial court accepted Cano's proffered pleading "supplementation" wherein he designated his action as one to cancel Macarena's certificate pursuant to Section 16.25 of the Texas Business and Commerce Code. Cano cannot now complain of the adequacy of

Macarena's pleadings. See Rule 67, Texas Rules of Civil Procedure.

■■■ As a general rule, one suing to restrain another's use of a trademark [1] has the burden of establishing his right to exclusive use of the trademark. *ABC Stores, Inc. v. T. S. Richey & Co.*, 280 S.W. 177 (Tex.Com.App. 1926, jdg. adopted); *Dixiepig Corporation v. Pig Stand Co.*, 31 S.W.2d 325 (Tex.Civ.App.–Dallas 1930, no writ). He must show either that he has the right to appropriate the mark as a trademark at common law or that it was registered. 55 Tex. Jur.2d Trademarks, § 28, pp. 663 -64 (1964). Generally, the enforceable right to a trademark within the geographical area of its use is acquired at common law by the one who first adopted and used it. See *Weiner King, Inc. v. Weiner King Corp.*, 407 F.Supp. 1274, 1280 (D.N.J. 1976); *ABC Stores, Inc. v. T. S. Richey & Co.*, supra. Generally, the question of whether a trademark has been established is a question for the jury. 55 Tex.Jur.2d, Trademarks, § 32, p. 667 (1964).

■■■ A certificate of registration issued by the Secretary of State under the provisions of the Texas Trademark Act is admissible in evidence as prima facie proof of: 1) the validity of the registration; 2) the registrant's ownership of the mark; and 3) the registrant's exclusive right to use the mark throughout the state of Texas in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated therein. Tex.Bus. & Comm. Code § 16.15(c) (1968). The Act specifically provides that no registration of a trademark shall adversely affect common law rights acquired in a trademark prior to its registration. While a mark remains effectively registered, no common law right may be acquired against the owner unless he abandons such mark. Tex.Bus. & Comm. Code § 16.27(a) (1968).

Here, both parties asserted priority of ownership in the trademark in question based upon adoption and use of the trademark prior to the time Macarena received his Certificate of Registration from the Texas Secretary of State. The jury failed to find that Cano adopted and used the trademark in question prior to the time Macarena did. There is no complaint before us concerning the form of the special issues which were submitted to the jury. Nor is there a point of error before us attacking on legal and factual sufficiency grounds the jury's answer to this special issue.

Both parties agree that the jury, in effect, found that neither Macarena nor Cano had acquired common law rights to the trademark. We are of the opinion that these unchallenged jury findings fail to establish that either party had priority in ownership of the trademark prior to the time Macarena duly registered the mark. Contrary to Cano's contentions, the invalidity of Macarena's registration, if any, does not necessarily follow. A person who adopts and uses a trademark is entitled to file an application for its registration. See Tex.Bus. & Comm. Code § 16.10 (1968). The jury's negative finding concerning priority of adoption and use is not tantamount to a finding that Macarena never adopted and used the trademark. The overwhelming weight of evidence in this case is to the effect that both parties participated significantly in simultaneously adopting and using the "La Tapatia" trademark and symbol as it related to the corn tortilla business in question. This is not a case where two people independently initially adopt and use similar trademarks in unrelated, but competing businesses. Appellant's first point of error is overruled.

■■■ In an interrelated point of error (no. 2), Cano complains that the trial court erred "in not deciding the merits of this suit

---

1. In Texas, the term "trademark" is statutorily defined as "a word, name, symbol, device, slogan or any combination thereof which, whether registered or not, has been adopted and used by a person to identify his goods and distinguish them from the goods manufactured or sold by others." Tex.Bus. & Comm. Code § 16.01(5) (1968). A trademark is "used" when it is affixed to the goods and the goods are "sold, displayed for sale, or otherwise publicly distributed." Tex.Bus. & Comm. Code § 16.02(a) (1968).

which, as amended by [Cano] was specifically acknowledged to be a 'Suit to Cancel Registration.' " What we have said concerning the jury's answers to the priority issues under the first point of error applies equally here. Cano had the burden to establish that the Certificate of Registration should be cancelled pursuant to Sections 16.16 and 16.25 which provide, in relevant part, as follows:

"§ 16.25 Suit to Cancel Registration

(a) A person who believes that he is or will be damaged by a registration under this chapter may sue to cancel the registration in a district court having venue."

\*      \*      \*      \*      \*      \*

"§ 16.15 Cancellation of Registration

(a) The Secretary of State shall cancel

\*      \*      \*      \*      \*      \*

(4) a registration concerning which a district or appellate court has rendered final judgment, which has become unappealable, cancelling the registration or finding that

(A) the registered mark has been abandoned;

(B) the registrant under this chapter or under a prior act is not the owner of the mark;

(C) the registration was granted contrary to the provisions of this chapter;

(D) the registration was obtained fraudulently; or

(E) the registered mark has become incapable of serving as a mark."

\*      \*      \*      \*      \*      \*

Cano did not request any special issues concerning any of the above enumerated findings which are prerequisites to obtaining cancelation of a certificate. Nor did he request the trial judge to make any such findings. None of the above required findings were established by the evidence as a matter of law. Cano's point of error two is overruled.

█ Cano's remaining two complaints concern his counterclaim under his contract of sale theory of recovery. At trial, Cano took the position that he acquired ownership of the trademark through an enforce-able contract of sale of the business in question. On appeal, Cano contends in point of error four that the jury's answers to the contract issues and the undisputed evidence establishes a binding contract of sale which Macarena breached. According to Cano, the contract so established "would subsume the trademark ownership issue within it, as business ownership assumes the incident of ownership of the business trademark." We do not agree.

The answer to the jury issue did not create a contract. It is undisputed that the parties executed the lease contract after clause four had been deleted because Cano did not agree to the price of $20,000.00. This was the only clause that was reduced to writing which in any way referred to a possible sale of the business. Although there is ample evidence that the parties continued to negotiate the terms of the sale, no agreement was ever embodied in a written contract. See Tex.Bus. & Comm. Code § 2.201 (1968). The evidence concerning whether the parties ever reached an oral agreement as to the purchase price was hotly disputed. There was no jury finding or undisputed evidence to take the alleged oral contract out of the operation of the statute of frauds. An unenforceable contract of sale alone is not sufficient to create ownership in a trademark. Cano's point of error four is overruled.

█ In point of error three, Cano complains that the trial court erred by denying his motion requesting permission for him to open and close argument. Cano argues that because he had the burden to prove the elements relating to his contract theory, he had the burden of proving all elements essential to prevail in the law suit.

Rule 266, Texas Rules of Civil Procedure, provides, in part, that "except as provided in Rule 269, the Plaintiff shall have the right to open and conclude . . . in the argument, unless the burden of proof on the whole case under the pleadings rests upon the defendant." Rule 269, Texas Rules of Civil Procedure, provides, in part, that the party having "the burden of proof on the

whole case, or on all matters which are submitted by the charge ... shall be entitled to open and conclude argument."

A review of the pleadings and the charge as it was submitted to the jury reveals that Cano, as defendant, did not have the burden of proof upon the whole case under the pleadings, nor upon the whole case or on all matters which were submitted by the charge as required by the above rules. We conclude that the trial court correctly denied Cano's motion to open and close arguments.

The judgment of the trial court is affirmed.