**ZAPATA CORPORATION, Appellant,**

v.

**ZAPATA TRADING INTERNATIONAL, INC., Appellee.**

**No. C14–92–00147–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 15, 1992.

Chris Lorenzen, Jr., Kathleen Hopkins Alsina, Houston, for appellant.

Morley H. White, Houston, for appellee.

Before JUNELL and DRAUGHN, JJ., and ROBERT E. MORSE, Jr., Former Justice (sitting by designation).

## OPINION

MORSE, Former Justice.

Appellant, Zapata Corporation appeals a directed verdict granted in favor of Appellee, Zapata Trading International, Inc. We reverse and remand.

Zapata Corporation (appellant) filed suit against Jose P. Montalvo d/b/a Zapata International for common law trademark and tradename infringement. Mr. Montalvo later incorporated his business under the name Zapata Trading International, Inc. (appellee). The appellant amended its petition and joined the appellee as a defendant. The appellant sought a temporary and a permanent injunction enjoining Jose Montalvo d/b/a Zapata International and Zapata Trading International, Inc. from operating businesses using those names in the State of Texas.

Before proceeding to trial, the parties agreed to a combined trial on the temporary and permanent injunction. Prior to the trial on the merits, the parties entered into a partial settlement agreement. Pursuant to this agreement, a judgment was entered ordering Jose Montalvo d/b/a Zapata International to desist and refrain from doing business using the name Zapata International.

After the announcement of the partial settlement, Zapata Corporation (appellant) and Zapata Trading International, Inc. (appellee) proceeded to trial. At the close of the appellant's evidence, appellee moved for a directed verdict, which the trial court granted.

In its first point of error, the appellant claims the trial court erred in granting a directed verdict in favor of the appellee because it had raised material fact issues as to each element of its case. The appellee made its motion for directed verdict on the grounds that the appellant had failed to carry its burden of proof as to its cause of

action and on the affirmative defense of laches.

An instructed verdict is proper in three instances: (1) when a defect in the opponent's pleadings makes them insufficient to support a judgment, (2) when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or (3) when the evidence offered on a cause of action is insufficient to raise an issue of fact. *McCarley v. Hopkins,* 687 S.W.2d 510, 512 (Tex.App.—Houston [1st Dist.] 1985, no writ) (citations omitted). When reviewing a directed verdict, this court must view the evidence in a light most favorable to the party against whom the verdict has been directed and disregard all contrary evidence and inferences. *Qantel Business Systems, Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 303 (Tex.1988). Our review is governed by the question of whether any evidence of probative force exists that raises fact issues on material questions presented. *Henderson v. Travelers Ins. Co.,* 544 S.W.2d 649, 650 (Tex. 1976).

■ Appellant sought a permanent injunction for trademark infringement. In order to succeed on this cause of action appellant had the burden to prove the following elements:

(1) the name it seeks to protect is eligible for protection;

(2) it is a senior user of the name;

(3) there is a likelihood of confusion between its mark and that of the other user;

(4) and because it seeks the equitable remedy of injunction, it must show the likelihood of confusion will cause irreparable injury for which there is no adequate legal remedy.

*Union Nat. Bank, Laredo v. Union Nat. Bank, Austin,* 909 F.2d 839, 844 (5th Cir. 1990); *accord, KIKK, Inc. v. Montgomery County Broadcasting, Inc.,* 516 S.W.2d 494, 495 (Tex.Civ.App.—Beaumont 1974, no writ); *Cano v. Macarena,* 606 S.W.2d 718, 722 (Tex.Civ.App.—Corpus Christi 1980,

writ dism'd). A common law trademark infringement action under Texas law presents no difference in issues than those under federal trademark infringement actions. *Waples–Platter Companies v. General Foods Corp.,* 439 F.Supp. 551, 583 (N.D.Tex.1977).

■ Appellant argues the evidence at trial was sufficient to raise a material fact question as to whether or not the name "Zapata" is eligible for protection. The classification of a mark is the first step in determining its eligibility for protection. *Union Nat. Bank, Laredo,* 909 F.2d at 844. In order for a name to be protected, it must be shown to be a suggestive term, an arbitrary or fanciful term, or a descriptive term that has acquired secondary meaning.[1] *Id.* Appellant claims the evidence shows "Zapata," as used by the appellant, is an arbitrary mark. A mark is considered "arbitrary" if it refers to an ordinary word which does not suggest or describe the services involved. *Id.* at 845.

■ The testimony at trial showed the appellant's use of the name "Zapata" does not describe or suggest the services involved. Kent Stephenson, Vice President, General Counsel and Secretary for appellant testified that the business of appellant was highly diversified and included an offshore servicing company, a fishing operation, and an oil and gas exploration company among its many holdings. He also testified appellant has neither conducted business in Zapata County nor has it had customers, suppliers or offices in Zapata County in over twenty years. The evidence showed appellant is headquartered in Houston and conducts its business worldwide. Appellant points to this evidence as proof that its use of "Zapata" is not connected to the county of Zapata nor to the goods or services it provides and is therefore, an arbitrary use. If it is an arbitrary use, then appellant does not have to show proof of secondary meaning. *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 791 (5th Cir.1983).

---

1. *See Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786 (5th Cir.1983) for a full discussion of trademark classification.

■ Appellant argues in the alternative that its use of "Zapata" is protectable as a descriptive term that has acquired secondary meaning. A geographic term is descriptive if it describes where the product or services are offered or manufactured. *Union Nat. Bank, Laredo*, 909 F.2d at 845. Descriptive marks are protectable only if there is proof they have acquired secondary meaning for the consuming public. *Zatarains, Inc.*, 698 F.2d at 793–94.

■ The party seeking protection of a name has the burden of proving the name has acquired secondary meaning. This is a substantial burden and it must be shown the name or mark denotes to the consumer a single thing coming from a single source. Both direct and circumstantial evidence may be used to establish secondary meaning. Evidence such as amount and manner of advertising, volume of sales, and length and manner of use may constitute circumstantial evidence relevant to the issue of secondary meaning. These factors combined may prove secondary meaning; together they can establish the necessary link in the minds of consumers between product and source. *Id.*, at 794–95.

At trial, appellant produced evidence that went to several of these factors. The testimony of Mr. Stephenson showed appellant had used the name "Zapata" continuously since 1954. Evidence showing long and extensive use has been held sufficient to prove a trade name has acquired secondary meaning. *Douglas v. Walker*, 707 S.W.2d 733, 734 (Tex.App.—Beaumont 1986, no writ).

Appellant was shown to conduct business on a worldwide basis and had thousands of employees and customers throughout the world. There was also testimony that consumers in the industry refer to the company as "Zapata." Mr. Stephenson testified that appellant's gross revenues for 1990 were about $90,000,000.

The evidence showed appellant uses its name on stationary, business cards, drilling rigs, boats, and buildings. Appellant also uses its name on promotional items such as t-shirts, windbreakers, umbrellas, and pens. Mr. Stephenson's testimony showed these promotional items were given to customers and suppliers. Use of names on business property and in promotional items have been used successfully to prove secondary meaning. *J.C. Penney Co. v. Walker*, 395 S.W.2d 76, 78 (Tex.Civ.App.—Waco 1965, writ ref'd n.r.e.).

■ Appellee contends appellant cannot protect a merely geographical name. Appellee argues because "Zapata" is a county and city in Texas, appellant cannot protect it for its exclusive use. Geographical names can be used in such a manner and for such a length of time that they do acquire secondary meaning in the minds of the consuming public and may become protectable. *Harrelson v. Wright*, 339 S.W.2d 712, 714 (Tex.Civ.App.—Eastland 1960, writ ref'd); *see also Burge v. Dallas Retail Merchants Ass'n*, 257 S.W.2d 733, 735 (Tex.Civ.App.—Dallas 1953, no writ); *In Re Nantucket, Inc.*, 677 F.2d 95, 99–101 (C.C.P.A.1982).

■ Looking at the above evidence in a light most favorable to the appellant, we find that appellant introduced some probative evidence on the issue of whether or not appellant has a name that is eligible for protection. Whether or not a tradename or trademark has been established is generally a question for the jury. *Cano*, 606 S.W.2d at 722.

We also find the evidence clearly establishes the appellant's status as senior user of the name. Mr. Stephenson testified appellant had used the name "Zapata" since 1954. Mr. Montalvo testified the appellee had used "Zapata" in its present form only since 1989 and used it for the first time in 1986.

■ Appellant then had to produce probative evidence that showed a likelihood of confusion between its name and the name used by appellee. Proof of actual confusion is not required. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1186 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). However, proof of actual confusion is strong proof that the likelihood of confusion exists. *Id.* Once actual confusion has been proved, it would

require an almost overwhelming amount of proof to refute it. *Id.*

The record shows three instances of actual confusion between appellant and appellee. Mr. Stephenson testified that appellant was twice served with suits meant for companies run by the owner of appellee. These two suits were intended for Zapata International which was the first incarnation of appellee's business.

Appellee argues these two instances of confusion should not be considered as probative evidence of actual confusion because it has agreed to no longer use the name Zapata International. Appellee only changed its name by adding the word "Trading" between Zapata and International. This evidence of prior confusion with appellee's old name is probative evidence and appellee's subsequent name change would only go to the weight of the evidence.

Appellant also brought forward a third instance of actual confusion. The appellant introduced a billing invoice addressed to appellant for equipment installed at the appellee's business location. This invoice was meant for the appellee using its new name and shows confusion on the part of the supplier.

Appellee argues all three instances only show mistakes were made and not actual confusion. Appellee is arguing semantics. If someone is mistaken it is quite likely because they are confused. *See Webster's Ninth New Collegiate Dictionary* 760 (1991).

█ Appellant produced other evidence that would go to the likelihood of confusion. Courts have used several factors to determine such a likelihood. They include:

(1) type of trademark;

(2) similarity of design;

(3) similarity of product;

(4) identity of retail outlets and purchasers;

(5) identity of advertising media utilized;

(6) defendant's intent;

(7) actual confusion.

*Armco, Inc. v. Armco Burglar Alarm Co., Inc.,* 693 F.2d 1155, 1159 (5th Cir.1982)

(citations omitted). A finding of likelihood of confusion does not have to be supported by a majority of these factors. *Id.*

The testimony of Mr. Stephenson showed appellant is a highly diversified corporation. It does business in the oil and gas industry, commercial fishing, and offshore servicing. Appellant engages in business in many locales throughout the world.

Mr. Montalvo, testifying for the appellee, stated his company is in the business of exporting industrial equipment. It also does business internationally. He testified that his company has dealt with Exxon, a major leader in the oil and gas industry.

A jury in evaluating the above testimony could find the parties were dealing in similar products and with similar purchasers. In addition, both use the word "Zapata." The jury would not be limited to these enumerated factors. *Id.* at 1160. Evidence of a company's diversification might also be significant:

> [d]iversification makes it more likely that a potential customer would associate the non-diversified company's services with the diversified company, even though the two companies do not actually compete.

*Id.* at 1161.

Altogether, appellant introduced evidence of actual confusion, of similarity in products and purchasers, along with the fact that appellant is a highly diversified company. We find this was enough evidence of probative force to raise a fact issue on the question of likelihood of confusion. The question of likelihood of confusion is a question for the trier of fact. *Soweco,* 617 F.2d at 1186.

█ Finally, appellant had the burden of showing the likelihood of confusion will cause irreparable injury because it sought the equitable remedy of injunction. We find appellant did introduce probative evidence to raise a fact issue on this matter.

The principal concerns of trademark law are twofold. They are to protect consumers against confusion and monopoly and to protect the investment of producers in their trade names to which goodwill may have accrued. *Union Nat. Bank, Laredo,* 909

F.2d at 843–44. The United States Supreme Court, in discussing common law trademarks, stated:

> [c]ommon-law trademarks, and the right to their exclusive use, are, of course, to be classed among property rights; but only in the sense that a man's right to the continued enjoyment of his trade reputation and the good will that flows from it, free from the unwarranted interference by others, is a property right, for the protection of which a trademark is an instrumentality.

*Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 413, 36 S.Ct. 357, 360, 60 L.Ed. 713 (1916) (citations omitted).

Appellant introduced evidence that it had been served in debt collection suits meant for the appellee. Both suits were for the collection of small debts. The association of these collection suits with the appellant could very well damage its reputation and the goodwill it has strived to build. Damage to the goodwill of a company cannot be easily compensated for by monetary damages. By showing the type of confusion that did occur, appellant produced probative evidence that could lead a jury to believe the likelihood of such confusion would occur again causing further damage to the appellant's reputation and goodwill.

Reviewing the evidence in a light most favorable to the appellant, we cannot say that the evidence offered to prove the vital facts is so weak as to do no more than create a mere surmise or suspicion of their existence. *See Henderson*, 544 S.W.2d at 654. This court finds appellant produced probative evidence to raise a fact issue as to each material element of its cause of action. Appellant's first point of error is sustained.

 In its second point of error, appellant claims the trial court erred in granting the appellee's motion for directed verdict because appellee failed to prove the affirmative defense of laches. Appellant raises this point because the trial court's granting of the directed verdict was not specific as to which ground of appellee's motion was the basis for his decision. Appellant has the burden to show the directed verdict

cannot be sustained on any of the grounds stated in the motion. *McAx Sign Co., Inc. v. Royal Coach, Inc.*, 547 S.W.2d 368, 369 (Tex.Civ.App.—Dallas 1977, no writ).

In order to prove laches, the appellee had the burden to prove:

(1) delay in asserting a right or claim;

(2) that the delay was inexcusable;

(3) that undue prejudice resulted from the delay.

*Armco, Inc.*, 693 F.2d at 1161 (citations omitted).

Appellee failed to show appellant delayed in asserting its claim. The record shows appellant first became aware of appellee's first use of the name "Zapata" in October 1988. Appellant introduced evidence showing it wrote appellee's predecessor company on October 31, 1988, asking it to discontinue the use of "Zapata" in its name.

When it became clear to appellant that appellee was not going to discontinue use of its name, appellant filed suit on May 17, 1989. After appellee incorporated in its present name, appellant amended its suit and sought the same relief against the new entity. These actions do not suggest delay on the part of the appellant.

Appellee points to the appellant's failure to seek a temporary injunction as both delay on the part of the appellant, and a prejudice of appellee's rights from the delay. However, the record shows appellant and appellee agreed to a combined trial on both the temporary and permanent injunction. Appellee had the right to not agree to the delay at the time the motion was originally made. As appellee agreed to this delay, it cannot now claim it was unfairly prejudiced by it. Appellant's second point of error is sustained.

 Appellee brings one counter point. Appellee contends that appellant, a foreign corporation, has no standing to challenge the name of a duly authorized Texas corporation. *See Continental Insurance Co. v. Continental Fire Ass'n*, 101 F. 255 (5th Cir.1900). Appellee's reliance on the language of this case is misplaced. Not only has the proposition relied upon by appellee

been criticized,[2] but it is also asking for greater protection than provided by Texas law. Article 2.05(C) of the Texas Business Corporation Acts specifically states:

> [t]he filing of articles of incorporation under Part Three of this Act, an application to reserve a specified Corporate name under Article 2.06 of this act ... *does not* authorize the use of a Corporate name in this State in *violation* of the rights of another under the federal Trademark Act of 1946 (15 U.S.C., Section 1052 et seq.), the Texas trademark law (Chapter 16, Business & Commerce Code), *or the common law.*

TEX.BUS.CORP.ACT ANN. art. 2.05(C) (Vernon Supp.1992), (footnote omitted) (emphasis added).

This provision clearly states that registration as a duly authorized Texas corporation does not allow the violation of common law trademark rights. Therefore, a company whose rights have been violated by a Texas corporation would have standing to sue in Texas courts. Appellee's contention is without merit and is overruled.

The judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.

**2.** *See United States Light & Heating Co. of Maine v. United States Light & Heating Co. of New York,* 181 F. 182, 183–84 (C.C.N.Y.1910); *Modern Woodmen of America v. Hatfield,* 199 F. 270, 273 (D.C.Kan.1912).