**REVERSE in Part, RENDER in Part, and AFFIRM; Opinion Filed August 12, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-01388-CV

### PREMIER POOLS MANAGEMENT CORP. & SHAN POOLS, INC. D/B/A PREMIER POOLS & SPAS, Appellants
### V.
### PREMIER POOLS, INC., Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-07182**

## MEMORANDUM OPINION
Before Justices Fillmore, Stoddart, and Schenck
Opinion by Justice Schenck

Premier Pools, Inc. ("Premier Pools") sued Premier Pools Management Corp. ("PPMC") and Shan Pools, d/b/a Premier Pools and Spas ("Shan Pools") for common-law trademark infringement, trademark dilution, and unfair competition. A jury returned a verdict in favor of Premier Pools and the trial court entered judgment on that verdict. On appeal, PPMC and Shan Pools challenge the legal and factual sufficiency of the evidence to support various jury findings and argue the trial court erred in granting injunctive and declaratory judgment relief. We conclude Premier Pools is not entitled to relief under the Uniform Declaratory Judgments Act, but is entitled to all other relief awarded. Accordingly, we reverse, in part, that portion of the trial court's judgment awarding relief pursuant to the Uniform Declaratory Judgments Act, and render judgment, in part, that Premier Pools take nothing on its attendant attorney's fee claim.

We otherwise affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## FACTUAL & PROCEDURAL BACKGROUND

In 1989, the Dodd family established Premier Pools as a Texas corporation with its headquarters in Lewisville, Texas. Premier Pools is in the business of constructing swimming-pools in North Texas. The year before the Dodds established Premier Pools, Paul Porter ("Porter") founded a pool-construction company called Premier Pools and Spas, Inc. in California and eventually expanded the business to Arizona, Nevada, and New Mexico. In 2010, after a business deal with his former business partner, Porter created PPMC with the intent of licensing the trade name "Premier Pools and Spas" to pool builders across the country in exchange for royalty payments.[1]

In March of 2011, PPMC entered into a licensing agreement with Premier Pools of DFW, Inc., a corporation established by Shan Johnson ("Johnson") and Mike Ribnikar, to operate as Premier Pools and Spas in four North Texas counties—Collin, Dallas, Denton, and Tarrant. Johnson attempted to register the business as "Premier Pools of DFW, Inc.," but the Texas Secretary of State denied the application because the name was already taken by the Dodds. As a result, Johnson registered the business under the name "Shan Pools, Inc." and filed an assumed name certificate in Tarrant County to do business as "Premier Pools and Spas."

In April of 2011, Johnson tried to register Premier Pools and Spas and Shan Pools's physical address, phone number and a domain name with the words premier and pools with Google. In doing so, he learned the domain name was already registered to another business. Johnson assumed that another PPMC licensee already registered the name in Texas.

---

[1] Porter's partner reserved the right to use the name "Premier Pools" in the Sacramento, California area.

In 2011, Sean Dodd became aware that Shan Pools was operating as Premier Pools in North Texas after a Flower Mound building inspector contacted him to let him know the city was preparing to "red tag" a pool permitted to Premier Pools. Sean Dodd did not recognize the address on the permit as being a property at which his family's iteration of "Premier Pools" was constructing a pool. He drove by the property and discovered a "Premier Pools & Spas" sign in the front yard. Soon thereafter, the Dodds received a letter from PPMC soliciting Premier Pools to become a licensee of PPMC. Sean Dodd contacted Porter and PPMC and asked them to stop using the name Premier Pools in Premier Pools's existing trade area. PPMC refused to do so and, according to Sean Dodd, Porter threatened to "squash" Premier Pools. Shortly thereafter, Premier Pools filed a lawsuit against PPMC and Shan Pools for trademark infringement, trademark dilution, and unfair competition.

The jury returned a verdict in favor of Premier Pools finding Premier Pools's mark was eligible for protection, and that PPMC and Shan Pools's conduct constituted trademark infringement, trademark dilution, and unfair competition, and caused irreparable harm to Premier Pools. The jury found that Premier Pools had proven sustained lost profits of $287,976 as a result of appellants' conduct and that Premier Pools should be awarded PPMC's profits of $167,030. The trial court entered a judgment incorporating the jury's findings. In addition, the trial court declared Premier Pools has and continues to have exclusive right to the use of the trade name and trademark "Premier Pools" in the various north Texas Counties in which the jury found "Premier Pools" had acquired secondary meaning, issued a permanent injunction, and awarded Premier Pools its attorney's fees.

On appeal, appellants raise the following issues. First, appellants challenge whether the evidence was legally and factually sufficient to establish that the mark "Premier Pools" was eligible for protection in any or all of the counties at issue in the case. Second, appellants

contend that the evidence was legally and factually insufficient to support the jury's findings of trademark infringement, trademark dilution, and unfair competition. Third, appellants argue the trial court erred by granting injunctive relief to Premier Pools because the "irreparable harm" findings on which the relief was based should have been disregarded as being in fatal conflict with the damages findings. Fourth, appellants contend the awards for lost profits and disgorgement of profits are supported by legally insufficient evidence. Fifth, appellants allege the trial court erred by awarding relief pursuant to the declaratory judgments act because the claims under the act were improperly added as an expedient for seeking attorney's fees. Sixth, and finally, appellants argue the award of attorney's fees to Premier Pools constitutes error because Premier Pools did not segregate its fees between claims for which they are recoverable and claims for which fees are not recoverable.

I.    SUFFICIENCY OF THE EVIDENCE

    A.    *Standard of Review*

        1.    Legal Sufficiency

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). In our review of the evidence, we "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Tanner v. Nationwide Mut. Fire Ins. Co.,* 289 S.W.3d 828, 830 (Tex. 2009).

        2.    Factual Sufficiency

When reviewing a jury verdict to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence, and should set aside the verdict only if it is contrary to

the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

        B.        *Was the Name "Premier Pools" Eligible for Protection in the Claimed Trade Area?*

In their first issue, appellants challenge the sufficiency of the evidence to support the jury's finding that "Premier Pools" was a mark eligible for protection in any or all of the counties at issue.

The parties stipulated that the mark "Premier Pools" is not inherently distinctive. Therefore, the name "Premier Pools" is eligible for protection only if it has acquired "secondary meaning." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 543 (5th Cir. 2015).

Secondary meaning develops when, through use over an extended period of time, consumers who are exposed to the mark begin to associate the mark with a single source. *Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 48 (Tex. App.—Houston [14th Dist.] 1992, no writ). Because trademark protection operates *in rem*, rather than simply between the parties, the secondary meaning inquiry poses the consumer association question as a general, rather than a personal, manner. *See e.g., Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1204 (Fed. Cir. 1994). What is critical of a mark that is not inherently distinctive is that a significant portion of the relevant consuming market has come to identify the name with a particular source—not necessarily the claimant. *Id.* Once this is established, the question then turns to priority of use in the trade area.

Whether secondary meaning has attached to a mark is a question of fact in each case. *BankTEXAS, N.A. v. First Bank*, No. 05–96–00497–CV, 1998 WL 12658, at *2 (Tex. App.—Dallas Jan. 15, 1998, no writ)(not designated for publication). As with proof of any fact, secondary meaning can be established through direct and circumstantial evidence. *Zapata Corp.*,

841 S.W.2d at 48. Evidence such as the amount and manner of advertising, sales volume, and length and manner of use constitute circumstantial evidence relevant to the issue of secondary meaning. *Id.* Direct evidence can consist of consumer surveys and consumer testimony. *Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1287 (7th Cir. 1989).

Consistent with these methods of proving secondary meaning, the trial court instructed the jury it should consider the following factors to decide whether the name "Premier Pools" had acquired secondary meaning.

(1) the amount and manner of advertising, promotion, and other publicity of Plaintiff's services using the Mark [Premier Pools]. Do not consider advertising or promotion undertaken by Plaintiff after Shan's first use of the name "Premier Pools and Spas" in deciding whether the Mark has acquired secondary meaning;

(2) the sales volume of Plaintiff's services using the Mark;

(3) the length and manner of Plaintiff's use of the Mark;

(4) consumer testimony, or other evidence of actual confusion;

(5) consumer surveys; and

(6) whether Defendants intended to copy the Mark.

None of these factors alone are dispositive of the issue of secondary meaning. In combination, the factors may prove secondary meaning. *Zapata Corp.*, 841 S.W.2d at 48. While appellants argue Premier Pools had to establish (1) the size of the consuming public in the counties listed in the jury charge, and (2) the portion of that consuming public that associated the mark with a particular source, and failed to do so, they cite no authority to support such a required showing, and we find none. Moreover, while the jury was asked to determine whether the mark "Premier Pools" had acquired secondary meaning in twelve different counties, the liability questions submitted to the jury were not conditioned on a specific county finding as we will detail later. The evidence adduced at trial supports a determination that the relevant market is not segmented among and between the listed counties. As a result, the jury was entitled to answer the liability

–6–

questions if it found "Premier Pools" had acquired secondary meaning in any one of the listed counties because county lines within the trade area did not matter. Therefore, we focus our analysis on the secondary meaning factors the trial court submitted to the jury and the evidence presented concerning same, not specific counties.

As an initial matter, we note that Premier Pools was not required to satisfy all of the factors in order to establish secondary meaning. *See Astoria Indus. of Iowa, Inc. v. Brand FX Body Co.*, No. 2–08–144–CV, 2010 WL 1433404, at *6 (Tex. App.—Fort Worth Apr. 8, 2010, pet. denied)(mem.op.). While we address each of the individual factors, our ultimate decision as to whether the evidence is legally and factually sufficient to support the jury's finding of secondary meaning rests upon the cumulative evidence.

### 1.  Advertising

Premier Pools presented evidence that the best advertising in the highly competitive pool construction business is by word of mouth—that is to say by reference tracing back directly or indirectly to prior customers. Advertising by word of mouth is a mode through which a name can achieve secondary meaning. *Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F.Supp. 1454, 1471 (D. Kan. 1996). Unlike more commoditized products, few people have direct repeat history of prior purchases and, given the expense involved, consumers are likely to seek neutral first-hand experience.

Sean Dodd testified that Premier Pools relies, in part, upon word of mouth to generate business and that its reputation has led to construction projects in twelve North Texas counties. Sean Dodd and the owner of Robertson Pools, one of Premier Pools's competitors, explained how the construction of a single pool in a neighborhood or community starts the process of spreading the word and can lead to multiple construction jobs. Sean Dodd further testified that Premier Pools advertises by placing yard signs at each of its construction sites, which totaled

over 1,400 prior to Shan Pools's entrance into the market. It also distributes brochures, has a listing in the phone book and sponsors youth sports and racing teams. PPMC conceded that yard signs and word of mouth are viable means of finding leads to customers because people trust friends and neighbors. Nevertheless, appellants argue Premier Pools's lack of internet presence prior to Shan Pools's entrance into the market vitiates against a finding the mark "Premier Pools" acquired a secondary meaning. Appellants cite no authority to support this argument and the evidence establishes the clientele for custom pools is limited and more referral based than internet sourced. Indeed, appellants produced no evidence below to suggest that consumers are likely to purchase a custom pool based solely on the presence of an internet advertisement and Sean Dodd testified that Premier Pools's internet advertising, which it instituted after Shan Pools entered the market, has led to the consummation of only two pool sales.

### 2. Sales Volume

The Dodds testified Premier Pools built over 1,400 pools in North Texas before Shan Pools entered the market and grossed sales in excess of 28 million dollars.

### 3. Length and Manner of Use

Premier Pools established it used the name Premier Pools in the North Texas market for twenty-two years before Shan Pools entered the market. Evidence showing long and extensive use supports the conclusion that a trade name has acquired secondary meaning. *Zapata Corp.*, 841 S.W.2d at 48.

### 4. Customer Testimony or other Evidence of Confusion

As to actual confusion, Premier Pools offered the testimony of nine impartial witnesses and the testimony of Peter Dodd, Sean Dodd, and Johnson.

The first impartial witness was a consumer for whom Premier Pools built a pool in 1997. She testified she went online to contact Premier Pools about re-plastering her pool, but she was

able to reach only Shan Pools. The second witness was a prospective customer who was referred by a neighbor for whom Premier Pools built a pool. However, the second witness mistakenly contacted Shan Pools, who never told him it did not build his neighbor's pool, although that witness later realized his mistake and reached Peter Dodd at Premier Pools. The third witness knew of Premier Pools from referrals from friends who had hired Premier Pools to build their pools as well as from his work for a custom home builder. He also mistakenly contacted Shan Pools instead of Premier Pools and realized his mistake and eventually engaged Premier Pools to build his pool. The fourth witness testified he had recommended Premier Pools to many neighbors and friends after Premier Pools built his pool nineteen years previously, but he knew of at least one incident where his neighbor mistakenly contracted with Shan Pools instead of Premier Pools. The fifth witness was a custom home builder who recommended Premier Pools to clients who mistakenly contacted Shan Pools, who ended up building their pool. The sixth witness was a structural engineer who contracted with Shan Pools to do some engineering work for "Premier Pools," which he assumed was the Dodds' company as he knew of no other, but he learned of his mistake when he sent his invoice to Peter Dodd. The seventh witness was the owner of one of Premier Pools's competitors, and he testified in his decades-long experience, he only knew of one Premier Pools until one of his salesmen ran into another Premier Pools. The eighth witness was another former customer of Premier Pools who had his pool built by the Dodds based on the recommendation of his father-in-law for whom Premier Pools had built two pools. He attempted to find the number for Premier Pools on the internet and mistakenly called Shan Pools. When he realized his mistake, he found the number for Premier Pools and cancelled his appointment with Shan Pools. The ninth witness testified he had received recommendations from numerous sources to contact Premier Pools, but he mistakenly contacted and contracted

with Shan Pools whose performance left him with the impression of doing business with "Premier Pools" to be "proceed with caution."

At trial, Johnson admitted that some customers, vendors, subcontractors, and cities have been confused by Shan Pools's use of the name Premier Pools. In addition, Peter Dodd testified he was aware of 80 instances of confusion and Sean Dodd testified he was aware of five sales Premier Pools lost due to the confusion created by Shan Pools's entrance into the market.

### 5.    Customer Survey

While consumer survey evidence is often highly instructive of secondary meaning, it is not required in all cases. *Nola Spice*, 783 F.3d at 546. While appellants hired an expert to conduct a survey and testify about the results, Premier Pools's marketing expert Lou Pelton, PhD ("Dr. Pelton"), testified that this case does not lend itself to meaningful survey analysis because the custom pool construction business is a service, not a product, and is reliant upon referrals and word of mouth because trust is important when hiring a pool builder to construct a pool, which on average costs around $50,000. Premier Pools's expert explained that under such circumstances, if a survey is performed it should be conducted as a focus group of property owners with the financial ability and desire to build a swimming pool. Appellants' expert conducted an internet survey of individuals who volunteered to participate in surveys generally in exchange for points redeemable for such things as clock radios. The respondents fell within a broad category of individuals who said they might consider, regardless of their home ownership and financial means and ability to spend $50,000 on a pool, building or remodeling a pool of unspecified cost at an unspecified time. The jury was not required to credit appellants' survey as controlling the secondary meaning question in view of its breadth and Dr. Pelton's testimony refuting its value.

## 6. Intent to Copy

As to whether appellants intended to copy the mark, the evidence shows Shan Pools attempted to register the name Premier Pools with the Texas Secretary of State without success. In addition, when Johnson attempted to register a domain name including the words premier and pools with Google, he was told the name had already been registered. The denial of Shan Pools's application with the Texas Secretary of State and interaction with Google is some evidence Shan Pools knew the name "Premier Pools" was already in use when it entered the pool construction market and, by proceeding without further inquiry, intended to copy the mark.

As to PPMC, it invited Premier Pools to become one of its licensees suggesting it was in a unique position to benefit from the relationship since it was already called Premier Pools. This is some evidence from which the jury could have concluded PPMC intended to copy the mark in North Texas.

Considering and weighing all of the evidence in the record pertinent to the finding the name "Premier Pools" is eligible for protection, we determine that there is more than a scintilla of competent evidence to support the finding, and the jury's finding that the mark had acquired secondary meaning is not so contrary to the overwhelming weight of all the evidence as to be clearly wrong and unjust. Accordingly, we conclude that the evidence is legally and factually sufficient to support the jury's finding that the name "Premier Pools" has acquired secondary meaning. We overrule appellants' first issue.

## C. *Liability findings*

In their second issue, appellants argue the trial court erred in rendering judgment in favor of Premier Pools because the evidence is legally insufficient to establish one or more elements on Premier Pools's claim for trademark infringement, trademark dilution, and unfair competition.

–11–

1.    Infringement

Appellants argue that, because the question on infringement did not include a county-by-county determination of infringement, it is impossible to tell if the jury's answer to the question concerned a county in which Premier Pools attained secondary meaning. As an initial matter, appellants did not object to the lack of a county-by-county determination of infringement or otherwise bring to the trial court's attention a request for such a determination, and thus, waived any complaint about the lack of such a finding. *See In re A.V.*, 113 S.W.3d 355, 358 (Tex. 2003). In any event, under the circumstances presented in this case, a county-by-county determination of infringement was not required. The Dodds and the owner of Robertson Pools explained that when considering high-end purchases, people tend to seek referrals and recommendations from others with relevant experience. The North Texas market is comprised of numerous counties and is metropolitan in nature. Peter Dodd testified that the whole metroplex is interconnected and customers are often referred to Premier Pools by individuals who live in other counties. Sean Dodd testified that someone may work in Dallas, live in Frisco, and tell friends about a pool Premier Pools built in University Park. Consequently, county lines are not significant in the infringement analysis.

Moreover, and pertinent to the issue of infringement, the first party to make commercial use of a mark in a trade area is generally held to be the "senior" user and is entitled to enjoin other "junior" users from using the mark, or one that is deceptively similar to it, subject to limits imposed by the senior user's market and natural area of expansion. *See Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.,* 909 F.2d 839, 842-43 (5th Cir. 1990). The evidence in this case establishes Premier Pools is the senior user of the mark "Premier Pools" in North Texas. As such, Premier Pools is entitled to enjoin other junior users from using the mark in its market and its natural area of expansion. Peter Dodd and Sean Dodd

testified to their use of the mark in every single county at issue. They also testified to their intention to continue to grow their business and build pools in all of the identified counties. Thus, the evidence is legally sufficient to support the jury's finding of infringement.

### 2. Dilution

A mark is diluted if there is a likelihood of dilution due to blurring or tarnishment. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 489 (5th Cir. 2004). "Blurring" and "tarnishment" were defined in the jury charge as follows:

> Blurring occurs when the plaintiff's trademark or trade name is used by the defendant as its own trade name, thereby weakening the plaintiff's ability to use the name as a unique identifier of its goods and services.

> Tarnishment occurs when the plaintiff's trademark or trade name is used by the defendant as its own trade name in a manner that tarnishes or appropriates the goodwill and reputation associated with the trademark or tradename.

Appellants argue PPMC and Shan Pools cannot be held liable for diluting Premier Pools mark because PPMC did not use Premier Pools as its own trade name and Shan Pools did business under "Premier Pools and Spa," not "Premier Pools." Premier Pools presented evidence that PPMC licensed the name "Premier Pools and Spas" to Shan Pools and that the use of the name Premier Pools and Spa in the same market in which Premier Pools operates, to sell pool construction services to consumers, caused confusion and thus blurred the source of the service. *See E. & J. Gallo Winery v. Spider Webs Ltd.*, 129 F.Supp.2d 1033, 1041 (S.D. Tex. 2001). Thus, the evidence supports the jury's finding appellants diluted Premier Pools's mark.

### 3. Unfair Competition

Unfair competition is the use or simulation by one person of the name, symbols, or devices of a business rival in such a manner as is calculated to deceive and cause the public to deal with the second user when they intended to and would otherwise have dealt with the first user. *Jud Plumbing Shop on Wheels, Inc. v. Jud Plumbing & Heating Co., Inc.*, 695 S.W.2d 75,

78 (Tex. App.—San Antonio 1985, no writ). To prove unfair competition, it is not necessary to prove that the defendants intended to deceive the public or that anyone was actually deceived. *Hudgens v. Goen*, 673 S.W.2d 420, 423 (Tex. App.—Ft. Worth 1984, writ ref'd n.r.e.). However, either actual or probable deception must be shown, and a mere possibility of deception is not enough. *Line Enters., Inc. v. Hooks & Matteson Enters., Inc.*, 659 S.W.2d 113, 117 (Tex. App.—Amarillo 1983, no writ).

Appellants challenge the jury's finding of unfair competition arguing PPMC is not a business rival of Premier Pools and PPMC and Shan Pools did not use the name "Premier Pools" in a manner calculated to deceive. While PPMC may not construct pools itself, its business model and profits are tied to pool construction. As to deception, Premier Pools did not have to prove Shan Pools intended to deceive consumers. A showing of actual or probable deception is sufficient. Numerous witnesses testified that they contacted Shan Pools believing it was Premier Pools. In addition, Shan Pools represented in its advertisements that it was established in 1988—a year strikingly similar to the year Premier Pools was established—even though it did not exist until 2011. This evidence supports the jury's finding appellants engaged in unfair competition.

We overrule appellants' second issue.

D.    *Damages*

In their fourth issue, appellants argue there is no evidence to support an award of lost profits and an award for disgorgement of profits.

1.    Lost profits

At trial, Premier Pools's damage expert presented two alternative calculations of lost profit damages. One was based on the specific pools the Dodds were able to identify that Premier Pools lost to Shan Pools, and the other on a projection of lost pool sales in 2011 and 2012.

–14–

Premier Pools's expert derived the first measure of lost profits by calculating the profits Premier Pools lost on three identifiable pool sales that went to Shan Pools instead of Premier Pools. He testified the lost profits from those sales totaled $56,698. Premier Pools's expert derived the second measure of lost profits based upon Sean Dodd's testimony that Premier Pools lost at least fifteen pool sales in 2011 and 2012 due to Shan Pools's infringement on Premier Pools's trade name. Premier Pools's expert calculated Premier Pools's average profit per pool during those years and concluded Premier Pools lost profits of $287,976 on these pools. The jury chose to award Premier Pools the higher measure of lost profit damages.

While proof of lost profits need not be exact, it cannot be speculative. *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 279, (Tex. 2015). Appellants are critical of Premier Pools's expert's reliance on Sean Dodd's testimony concerning lost sales arguing Sean Dodd's testimony is speculative. We disagree. Texas courts permit business owners to testify about the effect that another's conduct has had upon its business, including what they had reasonably anticipated from the business activities they were prevented from undertaking as a result of another's conduct. *Am. Heritage, Inc. v. Nevada Gold & Casino, Inc.*, 259 S.W.3d 816, 827 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Sean Dodd based his conclusions on the number of pools sales lost on past experience and market conditions, and Premier Pools's expert used actual financial data to calculate the lost profits. Consequently, Premier Pools's evidence of lost profits was not speculative and the jury's finding is supported by the evidence.

### 2. Disgorged profits

The evidence established PPMC's profits from infringement of Premier Pools's trade mark were the royalty payments it received from Shan Pools's sales. Johnson testified Shan Pools paid PPMC royalties of $186,806.87. PPMC's records showed royalty payments of

$164,205. The jury awarded profits of $167,030, which is within the range of the evidence presented.

In addition to arguing there is no evidence to support disgorgement of profits, PPMC argues the disgorgement award is duplicative of the lost profits award. Lost profits are compensatory and are awarded to restore the claimant to its position ex ante. George P. Roach, *Compensation Forfeiture: Stacking Remedies against Disloyal Agents*, 47 St. Mary's L.J. 249, 287–89 (2015). Disgorgement of profits is intended to eliminate unjust enrichment to the defendant by redirecting it to the claimant. *Id.* While it is conceivable that under some circumstances an award of lost profits and disgorgement of profits can result in a double recovery, those circumstances have not been shown to exist in this case. And, in any event, PPMC did not object to the submission of the disgorgement of profits question on this or any other ground and thus waived this complaint. *Hopkins Cnty. Hosp. Dist. v. Allen*, 760 S.W.2d 341, 343 (Tex. App.—Texarkana 1988, no writ) (Hospital District could not complain on appeal that the submission of a damage question allowed a double recovery because the Hospital District did not object to the charge on double recovery grounds); *see also Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex. 1987). Under these specific circumstances, we conclude the trial court did not err in requiring PPMC to disgorge the royalty payments it received from Shan Pools.

Accordingly, we overrule appellants' third issue.

## II. INJUNCTIVE RELIEF BASED ON FINDINGS OF "IRREPARABLE HARM"

Appellants argue the jury's finding of irreparable harm is contradicted by the jury's damages findings. We disagree. Among the damages Premier Pools claims it suffered as a result of appellants' conduct is a loss of reputation. The threat of loss of reputation may support a finding of irreparable harm, so long as it is not impermissibly speculative. *Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, 4:15–CV–571, 2015 WL 9876952, at *5 (N.D. Tex. Dec. 23,

2015).  We note that it is difficult to value the damage to a business reputation caused by the distribution of products bearing another's trademark.  *Controls Int'l, Inc. v. Kinetrol, Ltd.*, No. Civ.A.3:97–CV–2504–D, 1998 WL 158678, at *7 (N.D. Tex. Mar. 25, 1998).  Such valuation difficulties may justify a finding of a threat of prospective irreparable injury.  *See Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990) (stating that loss of control of reputation can constitute irreparable injury); *Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985*)* (stating that reputation is neither calculable nor precisely compensable, and holding that irreparable injury exists when control over reputation will be lost); *see also Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991) ("[W]hen economic rights are especially difficult to calculate, a finding of irreparable harm may be appropriate.").  In addition, the likelihood of confusion itself can constitute irreparable injury. *Hawkins Pro–Cuts, Inc. v. DJT Hair, Inc.*, No. CA 3–96–CV–1728–R, 1997 WL 446458, at *7 (N.D. Tex. July 25, 1997).

Multiple witnesses testified about the confusion caused by Shan Pools doing business as Premier Pools and Spas in the North Texas trade area.  Neither the injunction nor the posture of the case call for us to opine on the parties' rights elsewhere at this stage.  In addition, Sean Dodd testified about the harm Shan Pools caused to Premier Pools's reputation.  More particularly, Sean Dodd testified that complaints filed against Shan Pools with the Better Business Bureau appear to be complaints against Premier Pools and that Better Business Bureau ratings are important to consumers.  Sean Dodd testified that he could not put a dollar amount on the value of the reputation Premier Pools has lost as a result of PPMC's and Shan Pools's actions and that there is no amount of money that can replace what Premier Pools lost in reputation.

On the present record, we conclude Premier Pools established a threat of irreparable injury.  We overrule appellants' third issue.

III.    RELIEF PURSUANT TO THE DECLARATORY JUDGMENT ACT

In their fifth issue, appellants argue the trial court erred in awarding Premier Pools's attorney's fees. We agree. Texas law prohibits the recovery of attorney's fees unless authorized by statute or contract. *Tony Gullo Motors, I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). Here, the trial court based the award on the Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015). "The Declaratory Judgments Act is 'not available to settle disputes already pending before a court'" or an issue that is "already before the court as part of the plaintiff's case." *BHP Petroleum Co., Inc. v. Dillard*, 800 S.W.2d 838, 841 (Tex. 1990) (citing *Heritage Life v. Heritage Grp. Holding*, 751 S.W.2d 229, 235 (Tex. App.—Dallas 1988, writ denied)). Moreover, a party cannot assert a claim under the declaratory judgments act merely to justify an award of attorney's fees that would otherwise be impermissible. *Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 69 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Here, the declaratory judgment claim added nothing and provided access to no remedy that was not otherwise available pursuant to Premier Pools's other causes of action. Specifically, while the trial court granted declaratory relief to "declare the prior rights of the plaintiff in the use of the name and mark in the area found by the jury," that relief was available as remedies for other claims previously asserted. We sustain appellants' fifth issue.

Because we have sustained appellants' fifth issue, we pretermit their sixth issue complaining about the lack of segregation of attorney's fees. TEX. R. APP. P. 47.1.

**CONCLUSION**

We reverse the portion of the trial court's judgment awarding Premier Pools declaratory judgment relief and render judgment that Premier Pools take nothing on its attorney's fee claim.

We affirm the remainder of the trial court's judgment.

/DAVID J. SCHENCK/
DAVID J. SCHENCK
JUSTICE

141388F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PREMIER POOLS MANAGEMENT CORP. AND SHAN POOLS, INC. D/B/A PREMIER POOLS AND SPAS, Appellant

No. 05-14-01388-CV      V.

PREMIER POOLS, INC., Appellee

On Appeal from the 101st Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-12-07182.
Opinion delivered by Justice Schenck.
Justices Fillmore and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding PREMIER POOLS, INC. declaratory judgment relief and attorney's fees and **RENDER** judgment that PREMIER POOLS, INC. take nothing on its claim for attorney's fees. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 12th day of August, 2016.